UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-20394-CR-SEITZ/O'SULLIVAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALBERTO DUNCAN,

    Defendant,
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the defendant's Motion to Suppress (DE# 16, 6/18/08). On June 25, 2008, this case was referred to the undersigned by the Honorable Patricia A. Seitz, United States District Court Judge for the Southern District of Florida (DE# 19). Having held an evidentiary hearing on July 1, 2008 and having carefully considered the defendant's motion, the court file and applicable law, the undersigned respectfully recommends that the defendant's Motion to Suppress (DE# 16, 6/18/08) be **DENIED**.

## BACKGROUND

The defendant is charged by Indictment in the Southern District of Florida with possession of a firearm in violation of Title 18, United States Code, Section 922(g)(1); possession of powder cocaine with intent to distribute in violation of Title 21, United States Code, Section 841(a)(1) and possession of a firearm in furtherance of a drug trafficking offense in violation of Title 18, United States Code, Section 924(c)(1)(A). See Indictment (DE# 1, 5/2/08).

On June 18, 2008, the defendant filed his Motion to Suppress (DE# 16). The government filed Government's Response to Defendant's Motion to Suppress (DE# 23, 6/29/08). No reply memorandum was filed. An evidentiary hearing was held on July 1, 2008 before the undersigned. Detective Armando Borrego testified on behalf of the government. The defendant testified on his own behalf. The undersigned admitted the following exhibits: Photographs (Government's Exhibits 1 through 9), the Constitutional Rights/ Consent to Search form in Spanish (Government's Exhibit 10) and an English translation of the Constitutional Rights/ Consent to Search form (Government's Exhibit 10a).

## FINDINGS OF FACT

On January 29, 2008, Detective Armando Borrego and his squad responded to complaints that drugs were being sold from the defendant's residence.[1] At approximately 4:49 p.m., the officers arrived in six unmarked vehicles and parked in the swale across the street from the defendant's house.

Detective Borrego and Sergeant Jose Ramirez exited their vehicles and approached the defendant's house.[2] Detective Borrego and Sergeant Jose Ramirez were dressed in plain clothes and had their badges on necklaces around their necks. Detective Borrego's firearm was holstered in the small of his back and covered by his

---

[1] Detective Borrego's squad was comprised of Sergeant Jose Ramirez and Detectives Robert Holleran, William Pedraja, Kevin Donnelly and Lazaro Valdez with a K-9.

[2] The rest of the squad remained across the street along the swale. The defendant testified that prior to opening the door he saw 3 or 4 marked police cars outside his property. The Court does not find this testimony credible.

shirt. Sergeant Ramirez's firearm was in a holster next to his hip and was covered by clothing. At no point did Detective Borrego or Sergeant Ramirez's expose their firearms to the defendant.[3]

Detective Borrego knocked on the defendant's door and a few moments later the defendant opened the door. Detective Borrego introduced himself and Sergeant Ramirez. The defendant did not speak English. Detective Borrego spoke to the defendant in Spanish.[4] Detective Borrego advised the defendant that he and Sergeant Ramirez were conducting a narcotics investigation. Detective Borrego asked if he and Sergeant Ramirez could come inside the house. The defendant agreed and moved out of the way so that Detective Borrego and Sergeant Ramirez could enter. When Detective Borrego entered the house he saw a black kettle inside the doorway in plain view. He recognized it as a Santeria shrine. There were two pistols[5] inside the kettle. Detective Borrego asked the defendant if he lived by himself, the defendant responded that he did.

Detective Borrego and Sergeant Ramirez sat at the dining room table with the defendant.[6] Detective Borrego's tone was not confrontational, it was very calm.

---

[3] The defendant testified that he saw the officers' firearms and that was the reason he opened the door. The undersigned credits Detective Borrego's testimony that the officers' firearms were not visible. Notably, the defendant testified that the officers did not threaten him with their firearms.

[4] Detective Borrego and Sergeant Ramirez both speak Spanish.

[5] One of the pistols was a toy gun.

[6] The dining room table was a few feet away from the front door.

3

Detective Borrego told the defendant that law enforcement had received complaints that the defendant was selling drugs from his home. The defendant responded that he was a Santeria priest and that people visit him at home all the time. The defendant stated that there were no drugs in the house. Detective Borrego told the defendant that it was his duty to investigate the complaint and that he wanted to search the defendant's house. The defendant agreed to the search.

Detective Borrego explained to the defendant what a consent to search form was. Detective Borrego told the defendant that he did not have to allow the officers to search his home. Detective Borrego did not receive a response from the defendant to this statement. Detective Borrego then presented the defendant with a form entitled Constitutional Rights/ Consent to Search (Government's Exhibit 10). The form was in Spanish. Detective Borrego asked the defendant if he could read and write in Spanish. The defendant responded that he could. Detective Borrego read the form to the defendant and then gave the defendant the form. The defendant read the form to himself.

Paragraph 1 of the Constitutional Rights/ Consent to Search form states as follows: "You may refuse to give your consent to a search and you may demand that a Search Warrant be obtained before a search begins of the location or vehicles described below." The form further states: "I hereby give my consent to a search without a warrant by the officers of the police department of Miami-Dade, and of the entire area and contents of the following location, vehicle, water craft or aircraft described below." See Constitutional Rights/ Consent to Search (Government Exhibits

4

10 and 10a). The defendant wrote his address, signed and dated this form.

After the defendant signed the form,[7] Detective Borrego told the defendant that he would be bringing a K-9 inside the house. The defendant shrugged his shoulders and said "fine." Detective Valdez entered the defendant's house with a K-9. The K-9 alerted the officers to the kitchen. On the kitchen counter top there was a scale, several baggies and some cut[8] in plain view. The K-9 alerted to the cabinet underneath the kitchen sink. One of the officers opened the cabinet doors and saw an aerosol can for a brake part cleaner lodged between the plumbing. See Government's Exhibit 5. The can had a false bottom. The officers proceeded to open the can without asking the defendant. Upon opening the can, officers discovered four ounces of cocaine.

After the officers found the drugs, the defendant was arrested. Detective Borrego asked another detective to secure the firearm as evidence. The defendant questioned Detective Borrego about taking the firearm and stated that the firearm was part of his religion. The officers also found $755 in United States currency inside an empty flower vase.

## **LEGAL ANALYSIS**

The defendant maintains that his constitutional rights were violated when law

---

[7] The defendant testified that at the time he signed the consent form, officers were already searching his home and that Detective Borrego told the defendant the officers were not going to leave. The undersigned does not find the defendant's testimony credible.

[8] The term "cut" describes material used to reduce the purity and increase the quantity of cocaine.

5

enforcement officers entered his residence and searched it. See Motion to Suppress (DE# 16, 6/18/08). The defendant seeks to suppress the firearm, narcotics, United States currency and statements made by the defendant. Id. According to the defendant, his consent was not voluntary because the officers were already searching his home at the time he gave his consent and because Detective Borrego told the defendant the officers were not going to leave. The government argues that the defendant's consent was voluntary.

The undersigned finds that the defendant voluntarily consented to the search of his residence. The question of whether a consent was in fact voluntary or a product of duress or coercion, express or implied, is to be determined by the totality of the circumstances and is a matter for which the government has the burden of proof. United States v. Mendenhall, 446 U.S. 544 (1980). While a warrantless search is generally lawful when conducted pursuant to a subject's voluntary consent, the government must prove that consent was given voluntarily, as an independent act of free will and not mere acquiescence to police authority. Florida v. Royer, 460 U.S. 491 (1983). See also Florida v. Bostick, 501 U.S. 429 (1991). To be considered voluntary, a consent to search must be the product of an essentially free and unconstrained choice. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989).

In the instant case, the totality of the circumstances demonstrate that the defendant's consent was voluntary and not mere acquiescence to police authority. Detective Borrego read the Constitutional Rights/ Consent to Search form to the defendant. The defendant read, filled out and then signed the form acknowledging his

6

right to not consent to a search. There were no threats by the police. The defendant testified that Detective Borrego was not confrontational and was very calm. The defendant understood the form and voluntarily permitted law enforcement to search his residence.[9]

The defendant argued during the hearing that the officers did not have consent to open the aerosol can containing the drugs. According to the defendant, the officers should have asked the defendant if they could open the aerosol can or should have obtained a search warrant. The undersigned finds that the consent given in the Constitutional Rights/ Consent to Search was sufficient to allow the officers to search inside the aerosol can. The form contained the following language: "I hereby give my consent to a search without a warrant by the officers of the police department of Miami-Dade, and of the entire area and contents of the following location, vehicle, water craft or aircraft described below." See Constitutional Rights/ Consent to Search (Government Exhibits 10 and 10a).

In United States v. Martinez, 949 F.2d 1117, 1118 (11th Cir. 1992), officers

---

[9] The undersigned finds that the instant case is distinguishable from Tovar-Rico v. United States, 61 F.3d 1529 (11th Cir. 1995). In Tovar-Rico, the magistrate judge found that the defendant "had already observed officers explore every room in the apartment and could not reasonably have known that she could still refuse a search." Id. at 1536. Here, Detective Borrego testified that the officers did not begin their search until the defendant executed the Constitutional Rights/ Consent to Search form. The undersigned credits Detective Borrego's testimony and does not find the defendant's testimony credible. The defendant, having been charged with substantial offenses, certainly has a strong and compelling interest in the outcome of this case. Having observed the demeanor of the witnesses and considered their testimony as a whole, the undersigned will credit Detective Borrego to the extent the that defendant's testimony conflicted with the testimony of Detective Borrego. See Gallego v. United States, 174 F.3d 1196, 1198 (11th Cir. 1999) (a court may find based on all the evidence in the record, that a defendant's testimony is not credible).

approached the defendant and told her they were searching for narcotics. The defendant provided consent for the officers to search a mini-warehouse unit. When the officers went to the warehouse, they found a car surrounded by cardboard boxes. After searching the cardboard boxes, the officers pried open the trunk of the car and found narcotics. The defendant moved to suppress the narcotics arguing that the officers' search of the trunk exceeded the scope of the consent. The district court denied the motion to suppress. On appeal, the Eleventh Circuit held that "a general consent to a specified area for specific things includes consent to open locked containers that may contain the objects of the search, in the same manner that such locked containers would be subject to search pursuant to a valid warrant." Id. at 1120. Similarly in the instant case, the defendant's consent permitted the officers to search the aerosol can.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the defendant's Motion to Suppress (DE# 16, 6/18/08) be **DENIED.** Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), the parties may serve and file written objections to this Report and Recommendation with the Honorable Patricia A. Seitz, United States District Judge, within ten (10) days of receipt of this Report and Recommendation. See Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).

RESPECTFULLY SUBMITTED at Miami, Florida, this **2nd** day of July, 2008.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Seitz
All counsel of record